# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 12 C 5592** |
| **v.** | ) | **Case No. 07 CR 143** |
| | ) | **Judge Joan H. Lefkow** |
| **EMMETT BUFFMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Emmett Buffman has moved under 28 U.S.C. § 2255 for an order vacating, setting aside, or correcting his sentence. He argues that he was denied the effective assistance of trial and appellate counsel in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments. For the reasons stated below, Buffman's motion is denied.

## BACKGROUND

On May 2, 2007, a grand jury returned an indictment against Emmett Buffman charging him with five violations of federal law. *See* Indictment, *United States* v. *Buffman*, No. 07 CR 143 (N.D. Ill. May 2, 2007), ECF No. 9. Count One charged him with attempted possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 846; Count Two charged him with making his house available for the manufacture of crack cocaine, in violation of 21 U.S.C. § 856(a)(2); Count Three charged possession of 61.5 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); Count Four charged possession of a firearm in furtherance of Count Three, in violation of 18 U.S.C. § 924(c); and Count Five charged Buffman, a felon, with being in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Buffman pleaded guilty to Counts One, Two, Three, and Five by way of a written plea declaration. He proceeded to trial on Count Four. On November 29, 2010, after a bench trial, the court entered a verdict of guilty. *See* Findings of Fact and Conclusions of Law After Trial, *Buffman*, No. 07 CR 143 (N.D. Ill. Nov. 30, 2010), ECF No. 93. Sentence was imposed on July 5, 2011, and judgment was entered on the docket on July 13, 2011. On July 18, 2011, Buffman filed a timely notice of appeal. On April 24, 2012, the court of appeals affirmed. 464 F. App'x 548 (7th Cir. Apr. 24, 2012). Buffman is now serving his sentence.[1] This § 2255 motion was timely filed on July 16, 2012. *See* 28 U.S.C. § 2255(f)(1).

On October 18, 2012, Attorney Robert G. Clarke, a Federal Defender panel attorney, appeared on behalf of Buffman. (ECF No. 8.) A series of status hearings followed during which Mr. Clarke orally reported on his investigation of the case and his communications with Buffman concerning whether he could file an amended motion. On September 12, 2013, Mr. Clarke sought leave to withdraw on the basis that Buffman had not responded to his communications regarding his investigative conclusions (ECF No. 25) (from which the court infers that had concluded that he could find no grounds for an amended motion). Leave to withdraw was granted. (ECF No. 32.) The court granted Buffman leave to file an amended motion on March 13, 2014 and ordered the government to respond (ECF No. 35), which it did on April 30, 2014. (ECF No. 37.) Buffman's *pro se* amended motion is now before the court for decision.[2]

---

[1] Buffman was sentenced to a total term of 120 months in custody, 60 months on Counts 1, 2, 3, and 5 to run concurrently, and 60 months on Count IV to run consecutively to the other counts.

[2] The government contends that the amended motion is untimely because it was not filed within one year after the judgment became final and any exceptions to the timing rule do not apply. *See* 28 U.S.C. § 2255(f)(1) and (h). A judgment of conviction becomes final for § 2255 purposes when the time expires for filing a petition for *certiorari* on direct review. *See Clay* v. *United States,* 537 U.S. 522, 524-25, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003). The period for filing such a petition expires 90 days after the court of appeals enters judgment or denies a petition for rehearing. *See* Sup. Ct. R. 13. Here, the Footnote continued on following page

**LEGAL STANDARD**

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A district court must grant a § 2255 motion when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays*, 397 F.3d at 566-67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In order to establish constitutionally ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *See United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). The court must then consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* There is a strong presumption that counsel's performance was effective, *id.*, and the court must not let hindsight interfere with its review of

clock began to run on July 23, 2012, 90 days after the court of appeals entered judgment. Seventy-nine days elapsed until Clarke entered his appearance. The proceedings were impliedly suspended from October 18, 2012 through September 12, 2013 while Mr. Clarke worked on the case. Once Clarke was given leave to withdraw (November 21, 2013), 83 days passed until Feb. 12, 2014 (the date Buffman's *pro se* motion for leave to file an amended motion was received by the court). Excluding the period of Clarke's representation, the clock ran for 162 (79 + 83) days. The court finds the amended motion timely. This opinion addresses the issues raised in the original motion because they appear to be incorporated by reference into the amended motion.

counsel's decisions.  *See Harris* v. *Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 697).  Under the prejudice prong, to establish the reasonable probability that the outcome would have been different, the petitioner must show "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. *See United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

## ANALYSIS

A total of six attorneys filed appearances on behalf of Buffman.  His claims of ineffective assistance pertain to retained attorney Raymond L. Prusak, who represented Buffman during a portion of the pretrial preparation, and appointed attorney John L. Sullivan, who represented Buffman at his guilty plea, the bench trial, his sentencing, and on appeal.

**I.      Whether Attorney Prusak's representation was ineffective because he had been suspended from practice during the time he was representing Buffman in court and whether Buffman was prejudiced.**

Buffman alleges that Prusak was not legally able to represent him and "failed utterly" to give him adequate legal counsel on matters such as grand jury proceedings, his privilege against self-incrimination, and the advisability of pleading guilty to Count Four.  (ECF No. 1 at 5.)  He accuses Prusak and his unnamed "assignee's [*sic*]" of coercing him into pleading guilty to that count.  (*Id.*)  He also contends that Prusak failed to investigate his case.  Prusak entered an appearance for Buffman on May 10, 2007.  *See Buffman*, No. 07 CR 143, ECF No. 15.  On November 28, 2007, he was given leave to withdraw.  *Id.* at ECF No. 25.  Robert Willis entered an appearance on December 5, 2007.  *Id.* at ECF No. 27.  On September 24, 2008, Prusak was

granted leave to refile his appearance, substituting for Willis. *Id.* at ECF No. 48. On August 28, 2009, Prusak was granted leave to withdraw, along with members of his firm. The Federal Defender was directed to find new counsel for Buffman. *Id.* at ECF No 63.

According to the official website of the Illinois Attorney Registration and Disciplinary Commission, Prusak was suspended from the practice of law from December 9, 2008, through June 9, 2009, a period during which he was counsel of record for Buffman in this court.[3] *See* https://www.iardc.org/ldetail.asp?id=215485136 (last visited August 4, 2014). During that period, other attorneys from the Prusak Law Offices may have handled the case. On February 4, 2009, Jacob DiCiaula was given leave to file an additional appearance. *See Buffman*, No. 07 CR 143, ECF No. 53. On May 21, 2009, Elizabeth Trujillo, was substituted for Mr. DiCiaula. *Id.* at ECF No. 58. On that date, this court entered the parties' agreed order for a competency examination. *Id.* Time was excluded from the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(A), pending determination of Buffman's competency to stand trial. The next status hearing was held on July 30, 2009. *See Buffman*, No. 07 CR 143, ECF No. 61. By then, a stay of Prusak's suspension allowed him to practice law in a probationary status.

Although this court does not know whether Prusak actually engaged in any unauthorized legal representation of Buffman while he was under the order of suspension, it is apparent that nothing occurred in court during that period that could have prejudiced Buffman as he claims. Just two weeks after August 26, 2009, when Prusak withdrew for the second time, Attorney

_____

[3] Prusak "was suspended [effective December 9, 2008] for three years . . . with the suspension stayed after the first six months by probation with conditions." *See* https://www.iardc.org/ldetail.asp?id=215485136 (last visited August 4, 2014). On June 9, 2009, the stay took effect and was to continue until July 9, 2010. During the period of the stay, Prusak was allowed to practice law subject to conditions imposed by the court. On July 10, 2010, however, probation was revoked and the stay was vacated. Prusak was "suspended for the remaining two and one-half years of his suspension and until further order of the Court." *Id.*

John L. Sullivan entered an appearance on behalf of Buffman. Sullivan promptly moved for appointment of an investigator and for early return of subpoenas. *Id.* at ECF No. 67. On October 27, 2009, the court set the case for trial on February 16, 2010. *Id.* at ECF No. 68. That date was reset to July 19, 2010 at defendant's request. *Id.* at ECF No. 70. After denial of a motion to exclude certain evidence from trial, *id.* at ECF Nos. 71, 75, Buffman (on April 21, 2010) indicated his intention to plead guilty to four counts and to request a bench trial on Count Four. This decision was announced approximately eight months after Prusak withdrew from representation and after Sullivan investigated the case and prepared for trial. Whatever dissatisfaction Buffman may have with his retained counsel, he makes no specific allegation of the grounds for any motion that Prusak should have filed.[4] Buffman suffered no prejudice because he entered his guilty plea and made the decision to go to trial long after Prusak was out of the case.

Concerning his argument that Prusak failed to effectively represent him when he testified before the grand jury on May 2, 2007, Buffman does not state why he was prejudiced. Although he claims he was impaired by psychotropic medication, he offers no support for that assertion. It is undisputed that he told the grand jury that his health condition did not impair his ability to testify. The record of competency examinations performed more than a year later does reflect that Buffman suffered from mental illness. One clinical psychologist (who failed to opine on Buffman's competency) diagnosed Major Depressive Disorder, and Recurrent, Severe with Mood-Congruent Psychotic Features. Another psychologist found no major psychiatric illness, and a third diagnosed Antisocial Personality Disorder. All agreed that Buffman was of low

---

[4] Buffman contends that Prusak failed to file motions to suppress or move for a *Franks* hearing. Buffman does not elaborate on the basis for any such motion. He ultimately pleaded guilty to the drugs charges and one of the weapons charges. Moreover, Buffman admitted to possessing drugs and guns during his grand jury testimony.

intellectual functioning and had a history of depression, but no one concluded that Buffman was not competent to stand trial.  The psychologists' respective notes reflect that Buffman understood the charges against him, understood procedures, such as the roles of  prosecutor, defender, judge and jury, and was able to cooperate with counsel.   These evaluations, although not contemporaneous with the grand jury testimony, reinforce the conclusion that Buffman's testimony before the grand jury was not impaired by mental disability that would indicate he did not understand the nature of the proceeding.  Moreover, Buffman does not dispute that he was advised during the grand jury proceeding that the testimony he would give could be used against him, and he agreed to waive that right and the other *Miranda* rights arising from the Fifth and Sixth Amendments.  Further, years later, he stipulated at the beginning of the bench trial that he had been given the opportunity to make revisions and corrections to his grand jury statement and that he initialed each page of a revised grand jury statement and signed at the end, confirming it as his own.  *See* Trial Transcript, *Buffman*, No. 07 CR 143, ECF No. 116 at 70:20-71:15.

Although Buffman may now believe that he was ill-advised to testify, it remains that he was arrested while participating in an undercover drug operation, in his home, in possession of 61.5 grams of cocaine, drug paraphernalia, and a gun located near the cocaine.  *See* Findings of Fact and Conclusions of Law After Trial, *Buffman*, No. 07 CR 143, ECF No. 93 at 2-3. Undoubtedly, as Buffman conceded to the grand jury (*see* ECF No. 37 at 16), he agreed to testify in order to accept responsibility for his crimes in hope of receiving a reduced sentence.  The court cannot infer from the record that counsel's advice to testify was below an objective standard of reasonableness or that the result would likely have been more favorable to him had he not testified.

Finally, Buffman's allegation that Prusak coerced him to plead guilty to Count Four is belied by the fact that, in the end, he went to trial on that count. Even if Prusak wrongly insisted that Buffman plead guilty, it did not carry the day. There was no prejudice.

## II. Whether counsel at sentencing was ineffective for not properly seeking a downward departure.

Buffman contends that his counsel at sentencing, Mr. Sullivan, should have moved for a downward departure when the court, according to him, expressed that the pronounced sentence was "too much."[5] (ECF No. 34 at 4.) Buffman does not indicate the basis for any departure from the Guidelines range of 210 to 262 months in custody. The Presentence Report prepared by the Probation Office found no information that would warrant a sentence below that range. His counsel did argue for a drug amount lower than that recommended by the government, resulting in a reduction from a 10-year mandatory minimum to a 5-year mandatory minimum. (ECF No. 101 at 5-10, 15-21.) Furthermore, based on all the factors to be considered under 18 U.S.C. § 3553, the court sentenced Buffman to the statutory minimum of five years on the counts to which he pleaded guilty, to run concurrently, and the mandatory consecutive minimum of five years on Count Four. See *United States* v. *Roberson*, 474 F.3d 432, 436-37 (7th Cir. 2007) (sentencing factors set out in 18 U.S.C. § 3553(a) "cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress"); *see also United States* v. *Franklin*, 547 F.3d 726, 735 (7th Cir. 2008) ("The Supreme Court and this court have

---

[5] The transcript of the sentencing hearing reflects that the court, in its remarks explaining the sentence, did not say the sentence was too long. Rather, it stated to Buffman, "I'm having a hard time convincing myself that more than ten years is really needed in this case." Sentencing Transcript, *Buffman*, No. 07 CR 143, ECF No. 122 at 32:22-23. It added, on the other hand, "[Ten years] may not even be needed but [ ] you do have a pretty extensive criminal history. So my inclination is really to just give you the ten years. That's 120 months. That's the least I can give you, and I can't say you don't deserve it because of what you've done and what you've been involved with in the past and this whole situation here. . . ." *Id.* at 32:24-33:4.

consistently held that mandatory minimum sentences are not a violation of a defendant's due process rights.") (citing, *inter alia*, *Chapman* v. *United States*, 500 U.S. 453, 464-68, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991)).  Had there been a basis for departure, which there was not, the sentence could not have gone below the statutory minimum that Buffman received.  There was no ineffective assistance and Buffman suffered no prejudice.

### III.    Other claims

Buffman makes assorted additional claims of ineffective assistance that have no colorable merit.

### A.    Whether counsel was ineffective for failing to argue that restoration of his civil rights invalidates his conviction on Count Five.

Relying on *Buchmeier* v. *United States*, 581 F.3d 561 (7th Cir. 2009), Buffman claims that counsel was ineffective for not objecting to the firearm charge because petitioner's civil rights were restored by the State of Illinois.  He apparently is referring to his status as a felon, which was an element of the crime charged in Count Five.  Buffman believes that because his civil rights were restored after a felony conviction in Illinois (it is assumed for purposes of discussion that the right to possess a firearm was included), he was not a felon, and therefore not a felon-in-possession.  Buffman misunderstands the import of *Buchmeier*.  There, the defendant, like Buffman, had been convicted as a felon-in-possession under 18 U.S.C. § 922(g)(1) (and for receiving stolen firearms).  The defendant did not contend that his convictions were void because his civil rights had been restored.  Rather, he argued that, because his civil rights had been restored, he was not subject to an enhancement under the Sentencing Guidelines based on his status as an armed career criminal.  By contrast, Buffman was not sentenced as an armed career criminal, so *Buchmeier* does not apply.  In short, as stated in *Buchmeier*, "restoration of civil rights differs from expungement as a matter of Illinois law."  *Buchmeier*, 581 F.3d at 567.

**B.     Whether counsel was ineffective for not contending that the court lacked jurisdiction over the felon-in-possession charge.**

Buffman contends that his mere possession of a firearm is not and cannot be construed as a crime against the United States.  This is also entirely meritless.  As stated in *Hugi* v. *United States*, 164 F.3d 378, 380 (7th Cir. 1999), "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231,[6] and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts.  That's the beginning and the end of the 'jurisdictional' inquiry."  Congress has declared that it is an offense against the United States "for any person (1) who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).  In conjunction with the bench trial, Buffman admitted the factual basis for this offense, including the predicate jurisdictional fact that the firearm found in his home had traveled in interstate commerce.  *See* Stipulations, *Buffman*, No. 07 CR 143, ECF No. 85 at Stipulations 1-3.

**C.     Whether counsel was ineffective for failing to investigate whether no one read his *Miranda* rights to him.**

Buffman has already admitted that his *Miranda* rights were read to him before he testified before the grand jury.  In connection with the arrest, he refers to no self-incriminatory statement that should have been suppressed, although there was evidence that he admitted that a gun found in his home was used for protection of his drug business.  Buffman would have certainly been aware whether his *Miranda* rights (rights well known to anyone who has been prosecuted for a crime in the past or who has watched crime dramas on television or movies) were read to him at

_____

[6] "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  18 U.S.C. § 3231.

the appropriate time. He cannot fault counsel for failure to investigate that which was readily known to himself and could have been raised long before collateral review.

**D.** **Whether appellate counsel was ineffective for not filing an *Anders* brief.**

This argument merits little discussion. Attorney Sullivan represented Buffman on appeal. He filed a substantive brief claiming insufficiency of the evidence on Count Four and an Eighth Amendment challenge to the imposition of a consecutive sentence for the violation of 18 U.S.C. § 924(c.) *See* Brief for Defendant – Appellant Emmett Buffman, *United States* v. *Buffman*, No. 11-2634 (7th Cir. Dec. 15, 2011), ECF No. 17 at 14-28. Counsel is not required to raise every conceivable issue on appeal but may limit the appeal to the strongest issues. See *Jones* v. *Barnes*, 463 U.S. 745, 754, 103 S. Ct. 3308, 77 L. Ed. 987 (1983); *Shaw* v. *Wilson*, 721 F.3d 908, 915 (7th Cir. 2013). An *Anders* brief is submitted when there appear to be *no* viable issues for appeal. *See Anders* v. *California,* 386 U.S. 738, 744-45, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). That was not this case.

**E.** **Whether counsel was ineffective for failing to argue that Buffman was not guilty of Count Four.**

Buffman claims that the court found him guilty of Count Four by a preponderance of the evidence when he should have been tried by a jury based on proof beyond a reasonable doubt. (ECF No. 34 at 6.) In its findings of fact and conclusions of law after trial, the court defined the issue as follows: "whether the government has proved beyond a reasonable doubt that Buffman possessed this firearm *in furtherance of* the crime [charged in Count Three]." *Buffman*, No. 07 CR 143, ECF No. 93 at 4 (emphasis in original). It concluded that "[t]he balance of the [applicable factors] and Buffman's admission that he possessed the .22 revolver to protect him, the drugs and money in his house, and the drug-dealing activities that took place there demonstrate *beyond a reasonable doubt* that Buffman possessed the .22 revolver in furtherance

of a drug crime." *Id.* at 6 (emphasis added). If Buffman is also contending that he had a right to

trial by jury on Count IV, he is correct, but he knowingly gave up that right at the outset of the

bench trial.[7] This claim also has no merit.

### F. Whether this court should reduce his sentence.

Buffman asks the court to modify the sentence on the basis of 18 U.S.C. § 3582 or

§ 4205. (ECF No. 34 at 5.) Section 3582(c) permits the court to modify a sentence under

particular circumstances that are not present in this case. Any reduction in the offense level due

---

[7] The transcript of the trial proceedings held on Sept. 2, 2010 reflects the following colloquy:

THE COURT: . . . Mr. Buffman, as your lawyer just said, you do have a right to a jury trial on this . . . charge. Do you understand that?
THE DEFENDANT: Yes, your Honor.
THE COURT: [The defendant is advised of rights associated with a jury trial.] Do you understand how that works?
THE DEFENDANT: Yes, your Honor.
THE COURT: And, of course, here in the U.S., we consider the right to a jury trial a very important constitutional right, because it places the power of the citizenry between you, the accused, and the power of the government. Do you understand that?
THE DEFENDANT: Yes, your Honor.
THE COURT: Now, you do—you may select, if all of us agree, that you have just me sit in the same position as a jury; that is, I would hear the evidence, and I would decide guilty or not guilty based on proof beyond a reasonable doubt. Do you understand how that works?
THE DEFENDANT; Yes, your Honor.
THE COURT: Now, that's not the typical role of a judge. Usually, the judge decides what evidence comes in, . . . what the jury may hear, and decides other issues of law, but does not decide guilt or innocence. Do you understand that?
THE DEFENDANT: Yes, your Honor.
THE COURT: So, you're placing on me, a sole individual, the power of the jury.
THE DEFENDANT: Yes, your Honor.
THE COURT: Okay. And having gone over that with you, do I correctly understand that you still wish to waive your right to trial by jury?
THE DEFENDANT: Yes, your Honor.

*Buffman*, No. 07 CR 143, ECF No. 116 at 3:19-5:8.

to changes in the Sentencing Guidelines—for example, the anticipated retroactivity of Amendment 782,[8] under which Buffman has moved to amend his sentence, *see Buffman*, 07 CR 143, ECF No. 144—could not affect Buffman in light of the fact that he received the minimum sentence permitted by law.[9] Section 4205(g) allows the court "upon motion of the Bureau of Prisons [to] reduce any minimum term to the time the defendant has served." *See also* 18 U.S.C. § 3582(c)(1) (setting out criteria for allowing modification of a sentence on motion of the Bureau of Prisons); *Harris* v *Cross*, No. 14 C 306, 2014 WL 1119619, at *2 (S.D. Ill. Mar. 14, 2014) ("Before the sentencing court can consider compassionate release, the BOP must make the motion for release, after approving the prisoner's application."). Without a motion from the Bureau, this court may not modify the sentence.

## CONCLUSION AND ORDER

The court, having carefully considered each of the movant's claims, concludes that he has not demonstrated a basis in fact or law to conclude that he received ineffective assistance of counsel or that, for any other reason, the court sentenced him in violation of the Constitution or laws of the United States, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack.

Therefore, the § 2255 motion (ECF No. 1) is denied. The motion to schedule a 2255 hearing or set briefing dates (ECF No. 36) is denied as to the hearing and moot as to the response. The motion to find in movant's favor (ECF No. 38) is denied. The motion for status

---

[8] Amendment 782 reduced by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties in §§ 2D1.1 and 2D1.11. *See* http://www.ussc.gov/sites/default/files/pdf/amendment-process/federal-register-notices/20140730_FR_Final_Action.pdf (last visited August 4, 2014).

[9] The conviction on Count One carried a mandatory minimum sentence of 5 years. *See* 21 U.S.C. §§ 841(b)(1)(B) and 846. The conviction on Count Four carried a mandatory minimum consecutive sentence of 5 years. *See* 18 U.S.C. § 924(c)(1)(A)(i).

of copy of evidence (ECF No. 39) is denied.  The Clerk, however, will mail a copy of the docket sheet in this case (but not the underlying documents) to Buffman as he requests.  The motion for prompt disposition (ECF No. 40) is moot.  Buffman's motion to amend his sentence that he filed on his criminal docket, *Buffman*, 07 CR 143, ECF No. 144, is denied.  The case is terminated.

ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: August 5, 2014.